STATE BANK OF WESTFIELD v. WESTFIELD STOCK FARM COMPANY.

[No. 10,844. Filed October 13, 1921. Rehearing denied February 14, 1922. Transfer denied March 14, 1922.]

1. APPEAL.— Review.— Harmless Error.—Findings.— Improper Designation of Parties to Contract.—In an action for breach of covenant in a warranty deed,. the trial court's finding that the president of defendant company and the president of plaintiff company entered into a contract whereby the former agreed to sell and the latter agreed to buy certain land, instead of a finding that the contract was made by them as agents, held harmless to defendant against whom judgment was rendered. p. 10.

2. VENDOR AND PURCHASER.—Contract for Sale of Land.—Warranty Deed.—Breach of Covenant.—Mistake as to Quantity of Land.—Grantor's Liability.—Where a contract for the sale of land and the deed were for land described by government subdivisions, with covenant that there should be not less than a stipulated number of acres, and the parties believed that grantor was the owner of all the land described in the contract and deed, it is immaterial, as regards liability for shortage, that when the negotiations commenced a contract was made for land described as a certain farm and that the shortage arose because of the grantor not being the owner of a strip containing 3.45 acres, within the description of the deed, but outside the fence of the farm. p. 11.

3. TRIAL.—Findings.—Sufficiency.—In an action for breach of covenant in a warranty deed, because of shortage of land, a special finding of facts held not so indefinite or uncertain that a judgment could not be rendered thereon. p. 13.

4. APPEAL.—Review.—Disregard of Intervening Error.—Where it appears from the whole record that substantial justice has been done by the judgment rendered, no intervening error will avail in securing a reversal. p. 13.

5. APPEAL. — *Review.* — *Harmless Error.* — *Findings.* — In an action for breach of covenant in a warranty deed because of shortage of land, the trial court's finding that the value of the land "is," instead of "was," $146 per acre, *held* harmless, where the grantor covenanted in his contract to pay the grantee that amount for each acre that the tract conveyed should be short. p. 13.

From Tipton Circuit Court; *James M. Purvis,* Judge.

Action by the Westfield Stock Farm Company against the State Bank of Westfield. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Joseph A. Roberts* and *Shirts & Fertig,* for appellant.
*Cassius S. Shirley* and *Whitcomb & Dowden,* for appellee.

MCMAHAN, J.—Appellee recovered judgment against appellant for breach of a covenant in a warranty deed. Since the facts were found specially, we need not set out the pleadings.

The facts as found by the court are in substance as follows:

(1). In November, 1917, R. B. Carey who was president of appellant bank and who was also executor of the last will and testament of Rebecca Roberts, and Thomas J. Lindsay, president of appellee, entered into a written agreement wherein the former agreed to sell and the latter to buy the "Roberts" or "Westfield Stock Farm." Carey, as owner, agreed to furnish an abstract showing that he had a fee simple merchantable title, the purchaser being given time in which to have the title examined. After approval of the title and payment of purchase price seller to convey by warranty deed free of all liens.

(2). A few days later appellant delivered to appellee an abstract purporting to show the title and ownership of the farm which appellant intended to sell to appellee.

(3). Appellee's attorneys examined this abstract and gave it an opinion stating that appellant was the owner of the east half of the northwest quarter of section 2, township 18 north, range 3 east, and also the northeast quarter of section 2, except 100 acres off of the east side.

(4). December 7, 1917, appellant and appellee entered into a written agreement stating that appellant desired to sell to appellee the real estate described in finding No. 3 and hereafter referred to as tract No. 1 and that Carey as executor desired to sell 100 acres off of the east side of the northeast quarter of said section and designated as tract No. 2, and that appellee was unwilling to buy either of said tracts unless fully protected from loss or expenses growing out of certain defects and alleged liens, and in order to induce appellee to purchase said tracts appellant covenanted and agreed: First. To convey said tract No. 1 to appellee by warranty deed free of all liens for the consideration of $17,500; that tract No. 1 contained not less than 120 acres and that appellant would pay appellee $146 per acre for each acre therein less than 120 acres. Second. That Carey as executor should convey tract No. 2 free of liens for $22,000. Third. That appellee on becoming invested with the title should bring suit to quiet title thereto in appellee. Fourth. In the event any party to said suit should establish any interest therein or lien thereon, that such interest should be purchased and such lien paid out of the money appellee was to pay appellant for tract No. 1. $15,000 of the purchase price to be withheld until all such interests and liens were paid or removed by judicial decree, and in order to retain said sum of money and pay said adverse interests or claims there was delivered to the Fletcher American National Bank of Indianapolis certain promissory notes which appellee agreed to give appellant for the purpose of paying the purchase price, the balance

of the purchase price after the purchase of said interest and payment of liens to be paid by said Fletcher bank to appellant. That appellee among other things agreed: (1) to pay appellant $17,500 for tract No. 1 and to execute a certain mortgage on both of said tracts to secure a certain promissory note aggregating $19,500; (2) to pay Carey in cash for tract No. 2, $22,000.

(5). Appellant conveyed tract No. 1 to appellee by warranty deed, said tract being therein described as the east half of the northwest quarter of section 2, township 18 north, range 3 east, and the northeast quarter of said section 2, less 100 acres off of the east side thereof, and appellant in said deed guaranteed said tract to contain not less than 120 acres.

(6). Appellee paid appellant $17,500 for the land described in said deed.

(7). Shortly thereafter appellee filed an action to quiet its title to said lands, and appellant being one of the defendants therein appeared and filed an answer for the purpose of establishing its ownership in a certain mortgage lien.

(8). When said contract and deed were made and at all times prior to the execution of said deed appellant and appellee each believed appellant was the owner of the land described in said deed, neither party having any information or knowledge that any other person owned or had acquired by adverse possession or otherwise any part of said land.

(9). Appellant never was in fact the owner of a strip along the west side of said tract containing 3.45 acres.

(10), (11). Appellee first learned appellant did not own said strip in October, 1918, when certain defendants in said action to quiet title notified appellee that they were the owners of said 3.45 acres, whereupon appellee in writing informed appellant of said claim and

demanded that appellant take such steps as might be necessary to protect appellee and to save it harmless on account of said claims.

(12). The defendants claiming said 3.45 acres filed cross-complaints in said action and later a decree was rendered in their favor quieting their title thereto.

(13). Appellant admitted that said cross-complainants were the owners of said 3.45 acres and through its attorney prepared and endorsed appellant's approval to the decree in said action.

(14). Prior to the time when appellee received said notice of the claim of said parties to said strip of land, appellant and appellee both believed that the fence on the west side of said farm was on the line running through the center of said northwest quarter from north to south, that in such belief they were mutually mistaken, said fence during all the time above mentioned being about 3.45 rods east of the center line of said quarter section.

(15). Said deed correctly described the land which both parties believed at the time of its execution belonged to appellant.

(16). Appellee through its president, on one occasion in company with the cashier of appellant, and on another occasion in company with other persons, and before the consummation of the sale visited the location of the farm, saw and examined the buildings and improvements, observed the highways on the north and the east sides of said farm, inspected the soil and the location and condition of the fences including the partition fence on the west side thereof.

(17). That the value of the land involved is $146 per acre.

On these facts the court concluded as a matter of law that appellee should recover from appellant $564.70 including principal and interest.

Appellant filed a motion for a *venire de novo* on the grounds that the finding stated evidentiary matters and recitals of evidence instead of material facts, that the court failed to find the ultimate facts on which the issue of mistake can be based, and for the reason that the facts are so incomplete, vague and contradictory that no judgment could be rendered thereon. The errors assigned call in question the action of the court in overruling the motion for a *venire de novo* and the conclusions of law. Appellant insists that the court erred in overruling its motion for a *venire de novo* on the ground of inconsistencies and ambiguities in the finding of facts. The court in finding No. 1 states that Lindsay and Carey, administrator, entered into a contract a copy of which is set out in full. In finding No. 2 it is found that a few days after the execution of the said contract and in compliance with its terms appellant delivered to appellee an abstract purporting to show the title and ownership of the farm intended to be sold by appellant to appellee under the terms of said agreement. Appellant contends that the contract set out in finding No. 1 is evidentiary matter, and that instead of setting out this contract and stating that it was entered into between Lindsay and Carey and that it was a contract between the appellant and appellee, the court should have stated the ultimate fact. The ultimate fact, as we gather from appellant's brief, is that the contract was made by Lindsay and Carey as agents for appellant and appellee, and that the contract had been assigned. The next contention is that the court in finding No. 16 should have found that the farm was enclosed by the roads, fences, etc., that appellee knew it was so enclosed and that it was for the farm so enclosed that appellee had contracted to buy, and that findings Nos. 8 and 15 are in conflict with No. 14.

While it would have been proper for the court to have

specifically found that the contract set out in finding No.
1 was made by the parties thereto as agents for
**1.** appellant and appellee, and that the contract had
been assigned if the evidence warranted such a
finding, we fail to see how appellant is harmed by reason of a failure to find such fact. If such contract was
actually made by the parties acting as agents for the
parties to this appeal or if the rights of the parties
signing the same were transferred by assignment or
otherwise, appellant is not harmed. If on the other
hand appellee never acquired any interest in the contract and appellant was not in any manner obligated
by that contract, finding No. 1 and all of No. 2 referring
to it can be ignored and appellant would not be harmed
thereby. Giving these two findings a reasonable construction it is clear that Lindsay and Carey entered into
a contract whereby the latter was to sell and the former to buy a certain farm, Carey agreeing therein to
furnish an abstract showing that he had a merchantable
title to the farm. A few days later appellant furnished
appellee an abstract purporting to show the title and
ownership of the farm. If the expressions, "in compliance with its agreements therein" and "intended to
be sold by the defendant to plaintiff under the term of
the last mentioned agreement" are ignored, there is
enough left to show that appellant furnished an abstract
of title to appellee; that appellee caused the same to
be examined by its attorneys who gave appellee an
opinion relative to the title, stating that by such abstract appellant was the owner of the land described
in the abstract subject to certain objections; that later
appellant and appellee entered into a written contract
whereby appellant agreed to sell the land as described
in the complaint to appellee, no reference therein being
made to the contract between Lindsay and Carey or to
the "Roberts Farm" or the "Westfield Stock Farm."

The land to be conveyed being described as the east half of the northwest quarter of section 2, township 18 north, range 3 east, and also all of the northeast quarter of said section 2, except 100 acres off the east side thereof, for $17,500 with an express covenant on the part of the appellant that the said tract contained not less than 120 acres, appellant agreeing to pay appellee at the rate of $146 per acre for each acre or fraction thereof less than 120 acres. When the deed was executed conveying the land to appellee the land was described the same as it was in the contract between appellant and appellee.

Appellant contends that since the contract between Lindsay and Carey described the real estate as the "Roberts" or "Westfield Stock Farm," that it was 2. the intention of the parties that the only land which appellant agreed to convey was the land which appellant actually owned and that the fence on the west marked the western boundary of the land intended to be conveyed and that the parties through a mutual mistake included the 3.45 acres lying between the fence and the west line of the east half of said northwest quarter. We cannot agree with this contention. Appellant and appellee when the second contract was made, when the abstract was furnished, when the deed was made and at all other times prior to the execution of the deed believed appellant was the owner of the land actually described in the deed. Neither of said parties had any information or belief that any other person owned or had acquired by adverse possession or otherwise any part of the land described in said deed. They also believed that the fence along the west side of the farm was on the line running north and south through the center of said northwest quarter. In this they were mutually mistaken, in that said fence was about 3.45 rods east of said center line. The deed from

appellant to appellee, however correctly described the land which appellant and appellee believed at that time belonged to appellant and which it had agreed to sell to appellee. It is clear that both parties believed appellant owned all the land described in the deed; that it was their intention that the whole of the east half of said quarter should be included in the deed. The fact that appellant expressly covenanted that there should be not less than 120 acres of land in the tract conveyed is ample proof of their intentions. The price paid, $17,500, and the $146 fixed by the parties as the amount which appellant should pay appellee for each acre less than 120 is further evidence of their intentions. Appellant says that since the contract first referred to described the land as the "Roberts" or "Westfield Stock Farm" and its "owner" agreed to furnish an abstract of "said farm" and on receipt of the purchase price of the "farm" to convey the same, when taken into consideration with the words "east half of the northwest quarter" as written in the final contract and deed, described the land up to the fence and none beyond, and that the parties believed that the language used in the deed described the "Westfield Stock Farm" and no part of the land west of the fence. Appellant has cited a number of cases in support of its contention. We have examined all of them and find that the facts in each of them are quite different from the facts in the instant case. As before stated, appellant and appellee believed that appellant was the owner of the whole of the land described in the deed and that the deed correctly described the land which appellant owned. Appellant agreed to convey the land described in the deed. It furnished an abstract showing that it was the owner of such lands.

There is no such indefiniteness or uncertainty in the special findings as bring this case within the rule an-

nounced in *Boyer* v. *Robertson* (1896), 144 Ind. 604, 43 N. E. 879, and *Wysong, Exr.,* v. *Nealis* (1895), 13 Ind. App. 165, 41 N. E. 388.   Moreover, it appears from the whole record that substantial justice has been done by the judgment rendered, and the rule in such cases is that no intervening error will avail in securing a reversal.   *Wysong* v. *Nealis, supra.* Appellant further contends that the court failed to find what was the value of the 3.45 acres at the time of the transaction and calls attention to finding No. 16, wherein it is found that the value of the real estate involved in action "is" $146 per acre.   The contention of appellant is that the court should have found its value as of the time of conveyance.   The evidence is not before us, and we are bound by the facts as found.   The correctness of the finding is not questioned.   The court should have found the value of the land as of the date of conveyance.   But we are of the opinion that the use of the word "is" instead of "was" is not such an error as to call for a reversal of the judgment.   It is to be observed that appellant in its contract covenanted that the tract to be conveyed should contain not less than 120 acres, and agreed to pay appellee $146 per acre for each acre less than 120 acres.   This being true it does not appear that appellant has been harmed.   Substantial justice appears to have been done.

We therefore hold that there was no reversible error in overruling the motion for a *venire de novo* or in the conclusions of law.

Judgment affirmed.